UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| FERNANDO PADRON RODRIGUEZ, | ) | |
| Petitioner, | ) | 3:02-cv-0236-ECR-VPC |
| vs. | ) | |
| | ) | ORDER |
| E.K. MCDANIEL, *et al.*, | ) | |
| Respondents. | ) | |

This action proceeds on an amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, by petitioner Fernando Rodriguez, a Nevada prisoner represented by counsel. The action comes before the court with respect to its merits. The court will deny the petition.

**I.   Procedural History**

Petitioner was convicted, after a jury trial, of two counts of first degree murder with the use of a deadly weapon. Exhibit A.[1] The state district court sentenced petitioner to two terms of life imprisonment without the possibility parole, with equal and consecutive terms for the use of a deadly weapon. *Id*. The counts are to run consecutively to each other. *Id*. A judgment of

---

[1] The exhibits cited in this order in the form "Exhibit ___," are those filed by respondents in support of their motion to dismiss the petition for writ of habeas corpus, and are located in the record at docket #43 and #72.

conviction was entered on August 20, 1996. *Id.* Petitioner appealed, arguing the following fourteen grounds for relief:

> (1) The trial court erred in admitting evidence of uncharged bad acts.
>
> (2) The trial court erred in overruling appellant's objection to the state's peremptory challenge of African-American jurors.
>
> (3) The trial court erred in denying appellant's motion to prohibit the use of peremptory challenges to exclude jurors who express concerns about capital punishment.
>
> (4) The trial court erred in denying appellant's motion in limine regarding jury selection.
>
> (5) The trial court erred in denying appellant's motion to strike aggravating circumstances.
>
> (6) The trial court erred in denying appellant's motion to preclude the consideration of victim impact evidence.
>
> (7) The trial court erred in denying appellant's motion in support of specific jury instructions.
>
> (8) The district court erred in not allowing a jury instruction regarding residual doubt during the penalty phase of appellant's trial.
>
> (9) The trial court erred in denying appellant's motion for discovery and an evidentiary hearing regarding the manner and method of determining in which murder cases the death penalty will be sought.
>
> (10) The district court erred in the admission of certain autopsy photos.
>
> (11) The prosecutor, by impugning the character of defense counsel, committed forensic misconduct.
>
> (12) The prosecutor committed misconduct during closing argument of the penalty phase of appellant's trial.
>
> (13) The trial court erred by allowing certain hearsay statements into evidence.
>
> (14) The evidence adduced at appellant's trial was insufficient to support appellant's convictions.

Exhibit B. On June 8, 1999, the Nevada Supreme Court affirmed the judgment of conviction. Exhibit E.

Petitioner filed a petition for writ of habeas corpus with the state district court on May

2

5, 2000, alleging six grounds for relief.  Exhibit F.  Petitioner contended (1) petitioner's conviction must be set aside due to the knowing use of perjured testimony; (2) the trial attorneys should have, sua sponte, issued accomplice instructions to the jurors; (3) the trial court gave an improper reasonable doubt jury instruction; (4) the prosecutor's reference to witness intimidation in the presence of the jury was improper; (5) trial counsel was ineffective for failing to investigate; and (6) appellate counsel was ineffective for failing to raise grounds (1)-(5) on appeal.  *Id.*  The state district court denied the petition.  Exhibit H.  On appeal, the Nevada Supreme Court affirmed the denial of the state habeas corpus petition.  Exhibit I.

The instant federal habeas corpus action was initiated on April 25, 2002 (docket #1).  The court appointed counsel to represent the petitioner (docket #3).  Counsel filed an amended habeas corpus (docket #33).  Respondents moved to dismiss the petition, arguing several of the claims remained unexhausted (docket #43).  This court granted the motion to dismiss, finding grounds one, four, eight, ten, eleven, fourteen (a), (d), and (e), and sixteen were unexhausted and that ground five was frivolous (docket #45).  The court denied ground five.  *Id.*  Petitioner chose to return to state court to exhaust his claims (docket #46).  The court dismissed the petition without prejudice and administratively closed the case while the petitioner returned to state court (docket #47).

On May 17, 2006, the court granted petitioner's motion to reopen the case (docket #51).  Petitioner filed an amended habeas corpus petition (docket #54).  Respondents moved to dismiss several of the claims, asserting that they were procedurally defaulted (docket #59).  The court granted the motion to dismiss in part, finding grounds one, four, eight, ten, eleven, fourteen (a), (d), (e) and sixteen were procedurally defaulted (docket #61).  Respondents have filed an answer to petitioner's remaining claims (docket #65), and petitioner has filed a reply (docket #68)

**II.  Federal Habeas Corpus Standards**

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693 (2002). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "'if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases'" or "'if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent.'" *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694).

A state court decision is an unreasonable application of clearly established Supreme Court precedent "'if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Lockyer*, 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The unreasonable application clause "requires the state court decision to be more than incorrect or erroneous"; the state court's application of clearly established law must be objectively unreasonable. *Id*. (*quoting Williams*, 529 U.S. at 409). *See also Ramirez v. Castro*, 365 F.3d 755 (9th Cir. 2004).

In determining whether a state court decision is contrary to, or an unreasonable application of, federal law, this Court looks to a state court's last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Plumlee v. Masto*, 512 F.3d 1204, 1209-10 (9th Cir.

2008) (en banc).  Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

**III. Discussion**

    **A.  Grounds Two and Three**

In ground two petitioner alleges that the state used peremptory challenges to exclude black citizens from petitioner's jury, despite counsel's objection, in violation of his Sixth and Fourteenth Amendment rights.  In his third ground for relief petitioner asserts that the state attempted to create a jury prone to return the death penalty through the use of peremptory challenges, in violation of his Fifth and Fourteenth Amendment rights.

Petitioner raised ground two in his direct appeal.  The Nevada Supreme Court found the claim to be without merit, stating:

> Rodriguez also argued that the State's use of two peremptory challenges to strike two African-American venire members was racially motivated.  Pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986), the prosecution noted that the decision to exercise a peremptory challenge was based upon the jurors' response to questions regarding their ability to impose the death penalty. Both jurors responded that if they had the choice, they would not create a society in which the death penalty was an option.  While such a response would not justify challenge for cause, it is an appropriate race neutral explanation in support of a peremptory challenge.  Rodriguez offered no evidence to support a charge of purposeful racial discrimination.  Thus, we conclude that the district court did not err in refusing to strike the challenges. *See Purkett v. Elem*, 514 U.S. 765 (1995); *Washington v. State*, 112 Nev. 1067, 922 P.2d 547 (1996).

Exhibit E.  The Nevada Supreme Court also determined that petitioner's claim regarding the state's use of peremptory challenges to create a jury prone to return a sentence of death was moot as petitioner was not sentenced to death.  *Id.* at 6, n. 2.

Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.  "Peremptory challenges are not of constitutional dimension.  They are a means to achieve the end of an impartial jury." *Ross v. Oklahoma*, 487 U.S.

5

1  81, 88 (1988); *Poland v. Stewart*, 169 F.3d 573, 583 (9th Cir. 1999).  The exception to this rule is
2  when a peremptory challenge is used to excuse a potential juror for discriminatory reasons, under the
3  Equal Protection Clause.  *Batson v. Kentucky*, 476 U.S. 79, 89 (1986).  *Batson* requires (1) a
4  defendant raising a *Batson* claim to establish a prima facie case of discrimination, (2) the state to
5  show a race-neutral reason for the peremptory strike, and (3) the trial court to determine whether the
6  defendant has shown purposeful discrimination.  *Id.*

7  The state gave a proper race-neutral reason for its peremptory strike of prospective
8  jurors Cherry and Spencer, as both indicated that in a hypothetical world that they would not have
9  the death penalty.  The defense did not show purposeful discrimination in this case.  The Nevada
10 Supreme Court's determination was not an objectively unreasonable application of *Batson*.
11 Furthermore, petitioner has not shown that the Nevada Supreme Court's determination that ground
12 three was without merit is objectively unreasonable.  Petitioner challenges the state's attempt to
13 create a jury "prone" to return the death penalty.  However, even if the state did improperly use its
14 peremptory challenges to create a jury more likely to give the death penalty, the petitioner here did
15 not receive the death penalty.  Therefore, petitioner cannot show that any alleged error had a
16 substantial or injurious effect on the jury.  *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993).

17 The court will deny grounds two and three.

**B.  Ground Six**

19 In his sixth ground for relief petitioner alleges that the trial court improperly allowed
20 autopsy photographs to be admitted at trial over defense counsel's objection, even though the
21 prejudicial impact of the photographs outweighed their probative value, in violation of petitioner's
22 Fourteenth Amendment due process rights.  Petitioner states that the autopsy pictures were
23 gruesome, had no relationship to the issues, and were cumulative in nature.  Petitioner raised this
24 claim on direct appeal, and the Nevada Supreme Court found the claim to be without merit, without
25 discussing the claim.  Exhibit E.

26 Claims of error from an allegedly erroneous admission of photographs will not

normally state a federal claim, however, a claim of violation of due process may arise from the introduction of gruesome photographs of the victim. *See Butcher v. Marquez*, 758 F.2d 373 (9th Cir. 1985); *Batchelor v. Cupp*, 693 F.2d 859 (9th Cir. 1982). A federal court will not reverse a state court's admission of photographs unless the admission of evidence so infects the trial with unfairness as to render the verdict a denial of due process. *See Romana v. Oklahoma*, 512 U.S. 1, 12 (1994); *Gerlaugh v. Stewart*, 129 F.3d 1027, 1032 (9th Cir. 1997) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)). *See also Butcher*, 758 F.2d at 373; *Batchelor*, 693 F.2d at 865. Admission of photographs at trial rests largely within the discretion of the trial court. 758 F.2d at 865.

In the instant case, this court cannot say that the introduction of the autopsy photographs so infected the trial with unfairness as to render the verdict a denial of due process. Doctor Giles Sheldon Green, the chief medical examiner for the Clark County Coroner Medical Examiner Office, performed autopsies on the victims in this case (docket #72, parts 1-3, T 72). Dr. Green photographed the injuries to the victims and stated that the photographs would assist in describing the nature and effect of the wounds on the victims. *Id.* at T 73-74. The trial court admitted eight photographs into evidence that depicted the injuries of the two victims. *Id.* at T 75-76. The photographs were relevant as they were used by the coroner to explain the extent of the victims' injuries. There is no indication that the photographs so infected the trial as to render the verdict a denial of due process. Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.

The court will deny ground six.

**C. Ground Seven**

In ground seven petitioner alleges that the state committed prosecutorial misconduct during the penalty phase by making improper comments and arguments in violation of petitioner's Sixth and Fourteenth Amendment rights. Petitioner contends that during the questioning of his mitigation witness the prosecutor improperly commented on his right to remain silent. Petitioner

also points to the prosecutor's argument relating to how dangerous the petitioner was, and states that the argument was improper and likely resulted in sentence of life without the possibility of parole instead of life with the possibility of parole.

At the penalty hearing petitioner called Doctor Charles Colosimo, clinical psychologist, as a witness (docket #72, parts 24-25, T 58). During the state's cross-examination of Dr. Colosimo, the following exchange took place:

> Q. Where in your report does it say that he [the petitioner] showed some remorse for killing Brad Palcovic and Richley Miller? Can you point to the –
>
> A. I did not have that information, nor did I want that information when I interviewed him and tested him.
>
> Q. You didn't think it was important to know what went on in this case?
>
> Mr. Sgro [defense counsel]: Objection, you Honor. This is inappropriate. Of course he's not going to know. I tell him don't ask, just like I tell Mr. Rodriguez don't speak to anybody [sic].
>
> The Court: Objection sustained.
>
> Q. Well, I've given you the facts now Mr. Sgro didn't see fit to, but I have given you the facts of this case –
>
> Mr. Sgro: I object to him saying what I saw fit to. I'm a defense lawyer, Judge.
>
> The Court: I agree with you. That's sustained.
>
> Mr. Seaton: Let me leave Mr. Sgro out of it.
>
> The Court: All right.
>
> Q. (By Mr. Seaton) I've given you the facts of this case, a gloss-over, admittedly, but generally the facts of this case and how Mr. Rodriguez fits into this case. Now you know a little more. Is there anything that he said to you. Did he ever say to you that I feel badly for killing those two people?
>
> Mr. Sgro: Objection, you Honor. That is not relevant to this examination.
>
> Mr. Seaton: He said that he showed remorse, and I'm asking him where's the remorse.
>
> Mr. Sgro: Okay. Ask him where's the remorse, but he keeps trying

1           --

2          The Court: Ask him what he meant by that statement and then we'll move on, please.

*Id.* at T 83-85. Defense counsel then moved for a mistrial. *Id.* at T 91. The trial court denied the motion. *Id.*

The Nevada Supreme Court considered the instant claim on direct appeal, and found the claim to be without merit. The court stated:

> Finally, Rodriguez argues that comments and questions by the prosecutor during the cross-examination of Dr. Charles Colosimo (Dr. Colosimo) were improper and constitute reversible error. Dr. Colosimo was hired by the defense to conduct an evaluation of Rodriguez and testified on direct examination that Rodriguez was "remorseful." The prosecutor asked where the term "remorseful" appeared in Dr. Colosimo's report....The above comment was made during the penalty phase. While improper, the conduct does not warrant reversal. Given that Rodriguez did not receive the death penalty and considering the wealth of evidence in support of life without the possibility of parole, any error was harmless.

Exhibit E.

The Fifth Amendment prohibits comment on an accused's silence or instructions by the court that a criminal defendant's silence is not evidence of guilt. *Griffin v. California*, 380 U.S. 609 (1965). However, any error in relation to comments on a defendant's silence is subject to a harmless error analysis. A court must determine whether a prosecutor's comment on a defendant's silence had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619 (1993). *See also Williams v. Borg*, 139 F.3d 737, 744 (9th Cir. 1998) (stating the "relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process") (citations omitted).

The Nevada Supreme Court's determination was not objectively unreasonable. Although the prosecutor's comments were improper, petitioner cannot show that the prosecutor's actions prejudiced the outcome of the sentencing or had a substantial and injurious effect on the jury, as petitioner did not receive the death penalty.

Petitioner also contends that the state improperly elicited testimony regarding whether

9

he was a dangerous criminal.  During the penalty hearing, Ralton Lawrence, associate warden of programs at Southern Desert Correctional Center, was called by defense counsel (docket #72, parts 24-25, T 4).  During cross-examination by the state prosecutor the following exchange took place:

> Q. Okay.  Let me show you what's been marked State's Exhibit 47.  It's a one-paragraph report that comes out of our Clark County Detention Center across the street where Mr. Rodriguez has been housed.  Would you read the pertinent part there so that you understand what that report is about.
>
> A. Okay.  It says, "When Inmate Rodriguez came out for his free time, he asked for a razor.  I gave him one, and he returned it to me moments later.  He said that the razor was dull and wouldn't work.  I checked the razor and put it in the used razor bucket.  I then re-issued him a new razor.  He never returned it to me.  When it was time for Rodriguez to go back to his room, he said that he had turned the razor back in when I confronted him about it.  Rodriguez was moved to 2C.  A shakedown was conducted in 5D, then the dayroom.  C/O Cummings found the razor hidden in a roll of tissue paper that was inside the dayroom bin."
>
> Q. You like to keep your facilities safe, do you not?
>
> A. That's correct, sir.
>
> Q. You don't want inmates damaging one another.
>
> A. That's correct.
>
> Q. Can razors be a problem?
>
> A. Yes, they could be.
>
> Q. Could they be used as a weapon?
>
> A. They could be.
>
> Q. Have they been, in your experience?
>
> A. Yes.
>
> Q. Knowing that about Mr. Rodriguez, you, being the classification person –
>
>   Mr. Sgro: Knowing what?  I object to that.
>
>   The Court: All right.  Rephrase it.
>
>   Mr. Seaton: I'll make a complete sentence.
>
> Q. (By Mr. Seaton) Knowing that Mr. Rodriguez is the type of inmate who

|   |   |
|---|---|
| 1 | is willing to take a razor blade and hide it for his own personal use, whatever this might be, as a classification specialist, would that make you a little apprehensive about the safety of other inmates around Mr. Rodriguez? |
| 2 | |
| 3 | |
| 4 | A. It would. I would be concerned. |
| 5 | Q. Would it make you equally concerned about the safety of guards who would come into contact with him? |
| 6 | A. Yes. |
| 7 | Q. A razor such as that could be used on one of those people, could it not? |
| 8 | A. It could be. |
| 9 | Q. And it could be used to hurt them. |
| 10 | A. That's correct. |
| 11 | Q. Mr. Rodriguez has a whole bunch of convictions – prior felony convictions from Miami. I'm not going to remember them all, but let me tell you that they have to do with possession of controlled substances. They have to do with robberies. They have to do with carrying concealed weapons. Indeed, in this case, testimony came out that he always carried a gun and, of course, that he killed two people. You would take all of those things into consideration in your classification services, would you not? |
| 12 | |
| 13 | |
| 14 | |
| 15 | A. That's correct. |
| 16 | Q. Would you consider him to be more or less dangerous based on those facts that I've given you than the average inmate who comes through your classification? |
| 17 | |
| 18 | A. I would have to say more. |
| 19 | Q. A great deal more dangerous? |
| 20 | A. I don't know how much more. |
| 21 | .... |
| 22 | Q. All right. And you would consider Mr. Rodriguez to be among the more dangerous type of inmates to come before you in classification because of his background and the nature of this particular crime.<br>A. That's correct. |
| 23 | |
| 24 | |

*Id.* at T 17-21. On direct appeal, the Nevada Supreme Court rejected this claim without discussion. Exhibit 5.

The United States Supreme Court has held that a jury may consider future

11

dangerousness during the penalty phase of a capital trial. *Simmons v. South Carolina*, 512 U.S. 154 (1994). Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. Even if the prosecutor's introduction of information regarding the razor was improper, petitioner cannot show that the error had a substantial and injurious effect on sentencing. *Brecht v. Abrahamson*, 507 U.S. 619 (1993). The jury also heard other evidence of petitioner's potential "future dangerousness" and could have come to the same conclusion without information regarding whether or not petitioner hid a razor blade in the Clark County Detention Center.

The court will deny ground seven.

**D. Ground Nine**

In his ninth ground for relief petitioner alleges that the state's knowing use of perjured testimony by the only alleged eyewitness to the murders deprived petitioner of his rights to due process and a fair trial under the Sixth and Fourteenth Amendments. Petitioner states that witness Hunter Hunolt, the only eyewitness to the murders, committed perjury because he was going to be charged with the murder of the victims. Petitioner notes that the statement given to police differs from the testimony at the preliminary hearing, which also differs from the testimony at trial.

Respondents argue that this ground for relief is unexhausted because it was raised in the state courts as an ineffective assistance of counsel claim and now is being raised as a stand alone due process claim. This court found ground nine to be exhausted (docket #45). However, respondents are correct in stating that the Nevada Supreme Court addressed the instant ground as an ineffective assistance of counsel claim. Exhibit H. A claim is not exhausted unless a petitioner has fairly presented to the state court the same operative facts and legal theory upon which his federal habeas claim is based. *Tamalini v. Stewart*, 249 F.3d 895, 898 (9th Cir. 2001) (citing *Bland v. California Dept. of Corrections*, 20 F.3d 1294, 1295 (9th Cir. 1982), *overruled on other grounds by Schell v. Witek*, 218 F.3d 1017 (9th Cir. 2000) (*en banc*)). As the Nevada Supreme Court did not

address the claim as a due process claim, it appears that this ground remains unexhausted.

Even if this claim is exhausted, petitioner would not be entitled to relief. The Nevada Supreme Court rejected this claim on appeal from the denial of the state habeas corpus petition, stating:

> First, appellant failed to identify allegedly perjured testimony with any specificity. [fn 7: *See Hargrove*, 100 Nev. At 502, 686 P.2d at 225.] Instead, appellant's perjury claim actually rested upon discrepancies in the testimony of various State witnesses, particularly the State's eyewitness, with respect to their testimony at appellant's preliminary hearing. This court has held that discrepancies between the testimony of prosecution witnesses at a preliminary hearing and their subsequent testimony at trial are relevant to the credibility of those witnesses and are properly matters for jury determination. [fn 8: *See Ward v. State*, 95 Nev. 431, 596 P.2d 219 (1979); *see also Hutchins v. State*, 110 Nev. 103, 107, 867 P.2d 1136, 1139 (1994) ([I]t is for the jury to determine what weight and credibility to give various testimony.").] Moreover, we note that appellant was not prejudiced by any failure to pursue perjury charges against State witnesses. Appellant's trial counsel thoroughly cross-examined these witnesses thereby eliciting admissions that their trial testimony was indeed different from their testimony at appellant's preliminary hearing. Further, the district court issued an instruction regarding witness credibility and that instructed the jurors that if they "believe that a witness has lied about any material fact in the case," they "may disregard the entire testimony of that witness." "There is a presumption that jurors follow jury instructions." [fn 9: *See Lisle v. State*, 113 Nev. 540, 558, 937 P.2d 473, 484 (1997), *clarified on denial of rehearing*, 114 Nev. 221, 954 P.2d 744 (1998).] Thus, we conclude that appellant failed to demonstrate that his counsels' performance was deficient for failing to pursue perjury charges against State's witnesses, or that he was prejudiced by this alleged omission.

Exhibit H.

The Nevada Supreme Court's determination was not objectively unreasonable. Petitioner has not shown that the state prosecutor and trial court knowingly allowed false testimony at trial. *See*, *e.g.*, *Mooney v. Holohan*, 294 U.S. 103, 112 (1935 (stating a conviction obtained through the use of knowingly perjured testimony violates due process); *Morris v. Ylst*, 447 F.3d 979, 995 (9th Cir. 2005) (discussing the need to show false testimony). While there were numerous inconsistencies in eyewitness Hunolt's testimony, petitioner has not shown that Hunolt testified falsely, and that the state knew Hunolt was committing perjury and allowed him to testify at trial anyway. Moreover, defense counsel thoroughly cross-examined Hunolt regarding the

inconsistencies between his testimony at trial, his testimony at the preliminary hearing, and his statement to police (docket #72, Parts 15-16). The jury was properly allowed to judge the credibility of witness Hunolt. The trial court instructed the jury as follows: "If you believe that a witness has lied about any material fact in the case you may disregard the entire testimony of that witness or any portion of his testimony which is not proved by other evidence" (docket #72, Part 20, T 29).

The court will deny ground nine.

**E.  Ground Twelve**

In ground twelve petitioner contends that defense counsel was ineffective for failing to request accomplice jury instructions and for failing to sua sponte instruct the jury on accomplice testimony, in violation of petitioner's rights under the Sixth and Fourteenth Amendments.

In order to prove ineffective assistance of counsel, petitioner must show (1) counsel acted deficiently, in that his attorney made errors so serious that his actions were outside the scope of professionally competent assistance and (2) the deficient performance prejudiced the outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687-90 (1984).

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an 'objective standard of reasonableness,' . . . 'under prevailing professional norms.'" *Rompilla v. Beard,* 545 U.S. 374, 380 (2005) (quotations omitted). If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of the *Strickland* standard. *See Yarborough v. Gentry,* 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

The Nevada Supreme Court affirmed the lower court's denial of this claim on direct appeal, stating:

> Second, appellant's attorneys were not deficient for failing to request an accomplice instruction. [fn 10: NRS 175.291 provides, in pertinent part: "(1) A conviction shall not be had on the testimony of an accomplice unless he is corroborated by other evidence which in itself, and

14

> without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense. (2) An accomplice is...defined as one who is liable to prosecution, for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given."] First, the alleged accomplice was not charged with any offenses arising from the incident. Further, this court has held that "the granting on an [accomplice] instruction...is required only when an accomplice's testimony is uncorroborated." [fn 11: *Howard v. State*, 102 Nev. 572, 576, 729 P.2d 1341, 1344 (1986) (citing *Buckley v. State*, 95 Nev. 602, 600 P.2d 227 (1979)).] In this case, we conclude that the State provided sufficient corroboration to admit its eyewitness' testimony assuming that he was an accomplice. Specifically, other witnesses testified that appellant had a motive to kill one of the victims, that the appellant had in fact threatened that victim's life and several State witnesses testified that appellant subsequently confessed to the murders. Thus, we conclude that appellant's counsel was not ineffective in this regard.

Exhibit H.

Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. Petitioner has not shown that trial counsel was ineffective for failing to request an instruction on accomplice liability, or that the failure to request an instruction resulted in an unreliable verdict. *See Lankford v. Arave*, 468 F.3d 578 (9th Cir. 2006). Even if counsel were deficient for failing to request an accomplice jury instruction, the failure did not prejudice the outcome of the trial, as there was other evidence to corroborate Hunolt's testimony and to prove that the petitioner committed the crimes. The findings of the Nevada Supreme Court are presumed correct. 28 U.S.C. § 2254(e)(1). The court will deny ground twelve.

**F. Ground Thirteen**

In his thirteenth ground for relief petitioner alleges that the trial judge improperly quantified the reasonable doubt standard, in violation of his Sixth and Fourteenth Amendment rights. The state district court gave the following reasonable doubt jury instruction at trial:

> Twenty-three, the defendant is presumed innocent unless the contrary is proved. This presumption places upon the State the burden of proving beyond a reasonable doubt every material element of the crime charged and that the defendant is the person who committed the offense.
>
> A reasonable doubt is one based on reason. It is not mere possible doubt but is such a doubt as would govern or control a person in the more

15

> weighty affairs of life. If the mind of the jurors after the entire comparison and consideration of all the evidence are in such a condition that they can say they feel an abiding conviction of the truth of the charge, there is not a reasonable doubt.
>
> Doubt to be reasonable must be actual not merely possibility or speculation. If you have a reasonable doubt as to the guilt of the defendant he is entitled to a verdict of not guilty.

Docket #72, Part 20, T 27.

The Nevada Supreme Court considered this claim on appeal from the state district court's denial of the state habeas corpus petition. The Nevada Supreme Court found the claim was without merit, finding:

> Third, appellant's claim that his attorneys were ineffective for failing to object to a jury instruction that allegedly "quantified" reasonable doubt is without merit. The instruction to which appellant objected on this basis does not define or "quantify" reasonable doubt; rather, it advises the jurors to "bring to the consideration of evidence [their] everyday common sense and judgment as reasonable men and women." Thus, we conclude that appellant is not entitled to relief on this claim.

Exhibit H.

Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. The trial court did not improperly quantify the reasonable doubt standard as petitioner suggests. The reasonable doubt jury instruction given in this case was proper. Federal courts have previously upheld the same or similar Nevada jury instructions on reasonable doubt. *See Nevius v. McDaniel*, 218 F.3d 940, 945 (9th Cir. 2000); *Ramirez v. Hatcher*, 136 F.3d 1209, 1213-14 (9th Cir. 1998) (citing *Victor v. Nebraska*, 511 U.S. 1 (1994)). Petitioner has not demonstrated that the trial judge improperly quantified the reasonable doubt standard in violation of his Sixth and Fourteenth Amendment rights. The court will deny this claim.

**G. Grounds Fourteen (b) and (c)**

In his fourteenth ground for relief petitioner alleges that trial counsel was ineffective for (b) failing to have the strands of hair found in victim Miller's hands tested to compare the hair with the other individuals who were initially suspects, and (c) failing to have the palm print that was

1  cut from the wall of the crime scene compared with all of the persons who were known to be at the
2  scene of the killings.  Petitioner states that the hair found was a different color and length then his
3  own, and is evidence that a third party could have committed the murders.  Moreover, petitioner
4  contends that had counsel investigated the palm print it would have supported his allegation that he
5  was not present at the time of the murders.  Counsel had the palm print compared to the victims,
6  witness Hunolt and the petitioner, and none of the fingerprints matched, thereby showing that
7  another person was present at the scene of the crime and could have committed the murders.
8          The Nevada Supreme Court rejected these grounds in the appeal from the lower
9  court's denial of the state habeas corpus petition, stating:

> First, appellant claimed that his trial attorneys conducted an inadequate pre-trial investigation. Specifically, appellant contended that his attorneys "were aware of the [following] facts yet failed to conduct an adequate investigation": ...(5) that a palm print near one body was never properly tested against other possible suspects; (5) that long blond hairs were found in one of victim's left hand which could not have come from appellant whose hair was short and black....Appellant concluded that this evidence "indicated that someone other than the [appellant] committed the murders."
>
> Our review of the record on appeals that the district court did not err in denying appellant relief on these claims.  First, appellant failed to articulate how his counsels' pre-trial investigation was deficient in as much as he admitted that they were "aware" of the foregoing facts. [fn 6: *See id*. at 502, 686 P.2d at 225; *Kirksey*, 112 Nev. at 987, 923 P.2d at 1107 (citing *Strickland*, 466 U.S. at 687).]  Moreover, we find appellant's claim belied by the record.  Trial counsels' defense theory, first introduced in their opening statement, was that appellant did not, indeed could not have committed the instant crimes and that he was the victim of a rush to judgment on the part of law enforcement officials.  Defense counsel thereafter elicited all of the above information on direct examination of their own witnesses and cross-examination of State witnesses.  Appellant's attorneys then contended in their closing arguments that the above facts raised a reasonable doubt as to appellant's guilt.  Again, appellant failed to indicate what additional facts and evidence his attorneys could have adduced with a more thorough investigation.  Thus, we conclude that appellant's trial counsel did not conduct an inadequate pre-trial investigation and, therefore, that their performance was not ineffective in this regard.

Exhibit H.  Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's
decision was contrary to, or involved an unreasonable application of, clearly established federal law,

as determined by the United States Supreme Court.  Defense counsel noted during closing arguments that there was a hair found in victim Miller's hand that could not be the petitioner's hair (docket #72, Part 21, T 74-75).  Defense counsel stated that the police failed to test that hair, and that it could belong to the person who really committed the murders.  *Id.*  Defense counsel also mentioned the palm print found on the drywall that was cut out.  *Id.* at T 80-81.  Defense counsel argued that none of the evidence from the crime scene incriminated the petitioner and indicates that another person committed the crimes.  *Id.* at T 81.

Petitioner has not demonstrated that had counsel investigated the hair and the palm print that another suspect would have been uncovered.  Moreover, counsel did investigate and attempt to match fingerprints to those on the palm print.  Furthermore, petitioner cannot show that any of counsel's deficiencies prejudiced the outcome of the trial, as counsel used the lack of investigation as a defense, to argue that there was no evidence to prove the petitioner had committed the crimes and that clearly the police had failed to locate the person who did commit the murders.  The court will deny grounds fourteen (b) and (c).

**H.  Ground Fifteen**

In ground fifteen petitioner contends that appellate counsel was ineffective for failing to raise meritorious issues on direct appeal, in violation of petitioner's Sixth and Fourteenth Amendment rights.  Petitioner states that appellate counsel should have raised trial counsel's ineffectiveness on direct appeal.

"Claims of ineffective assistance of appellate counsel are reviewed according to the standard announced in *Strickland*."  *Turner v. Calderon*, 281 F.3d 851, 872 (9th Cir. 2002).  A petitioner must show that counsel unreasonably failed to discover non-frivolous issues and there was a reasonable probability that but for counsel's failures, he would have prevailed on his appeal.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

The Nevada Supreme Court addressed this claim on appeal from the denial of the state habeas corpus petition.  The court found this ground to be without merit, stating:

> Appellant next raised claims of ineffective assistance of appellate counsel on the basis that appellate counsel failed to pursue the above claims as independent constitutional violations in appellant's direct appeal. The *Strickland* test applies to claims of ineffective assistance of appellate counsel. [fn 13: *See Kirksey*, 112 Nev. at 998, 923 P.2d at 1113-14.] To establish prejudice based on the deficient assistance of appellate counsel, a defendant must show that the omitted issue would have a reasonable probability of success on appeal. [fn 14: *Id.*]
>
> Again we conclude that appellant is not entitled to relief on these claims. First, claims of ineffective assistance of counsel may not be raised on direct appeal, "unless there has already been an evidentiary hearing." [fn 15: *Feazell v. State*, 111 Nev. 1446, 906 P.2d 727, 729 (1995).] Further, as the above discussion establishes, appellant's claims are without merit and thus without a reasonable probability of success on appeal.

Exhibit H. The Nevada Supreme Court's determination was not an objectively unreasonable application of *Strickland*. Petitioner has not demonstrated in any of his ineffective assistance of counsel claims that he is entitled to relief. Therefore, appellate counsel would not be ineffective for failing to raise claims of ineffective assistance of counsel on direct appeal, as there is no indication that but for counsel's failures that these claims would have prevailed on appeal.

The court will deny ground fifteen.

**IV. Certificate of Appealability**

In order to proceed with an appeal from this court, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.* The Supreme Court has held that a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Supreme Court further illuminated the standard for issuance of a certificate of appealability in *Miller-El v. Cockrell*, 537 U.S. 322 (2003). The Court stated in that case:

> We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail. As we stated in *Slack*, "[w]here a district court has rejected the constitutional claims on the merits, the showing required

to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."

*Id.* at 1040 (quoting *Slack*, 529 U.S. at 484).

The court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appeal, and the court determines that none meet that standard.  Accordingly, the court will deny petitioner a certificate of appealability.

**IT IS THEREFORE ORDERED** that the amended petition for a writ of habeas corpus (docket #54) is **DENIED**.

**IT IS FURTHER ORDERED** that the clerk shall **ENTER JUDGMENT ACCORDINGLY**.

**IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY**.

DATED this 2nd day of September, 2009.

*Edward C. Reed.*
_____
UNITED STATES DISTRICT JUDGE